The final case for argument is 24-1820, Cruz v. DHS. May it please the Court, Lorenzo Palomar, Stockholm, representing Edwin Cruz, the appellant, who is here present in the courtroom. We are appealing a Medicine Assistance Protection Board decision that contradicts the very essence of the case history of this Court with respect to personal matters. My client never violated a rule, never violated a law. My client did have an extramarital affair prior to Mr. Baquero, who was temporarily his supervisor, who had and continue to have an extramarital relationship with the same female officer. Unfortunately for my client, the relationship had already ended. It was no longer in existence. In the court, and in our appendix, you can see that during the alleged, now stipulated relationship, my client's reviews were exceeding expectations. Not only had he received the highest honor DHS has ever conveyed upon a civil servant, which was the Eagle Award, he also had an exemplary military career, retiring as a major. I appreciate everything you're saying, but the charges were the charges and they were sustained. And there was conduct on becoming a supervisor. Yes. There was misuse of government property and there was use of government property for other than official purposes. So you've got to demonstrate to us, I think, how the Merit Systems Protection Board, in its judgment, is sustaining those charges here. Because the opinion does not say how, because first and foremost, conduct on becoming, the basis of this court precedent in various cases is that conduct that is private in nature is often seldom or sufficient to remove an individual from civil service. Do we have cases where it was someone in a supervisory capacity having that relationship, as opposed to just someone having an extramarital affair on the outside? Well, conduct on becoming, it has to deal with the agency. This, nothing that he did, had to do with the agency. The use of force, the agency in this inextricable evidence. Wait, you don't think a supervising, supervisor having an affair with a subordinate has anything to do with the agency? I mean, doesn't that have all kinds of implications possible if, you know, the supervisor, you know, could show favoritism to that person versus other person, or other employees might perceive some unfairness there. They don't have to prove that necessarily, but that has a potential nexus to the agency, doesn't it? But it never happened, Judge. It never happened. That's a supposition. Well, that's a different charge, though. What never happened? I mean, there's no dispute on that. When I cross-examined the deciding officer of the agency, and it's in the record, I ask her if any of the functions that my client was supposed to do, or the purpose of the agency, which is to protect our borders, did illegal agents come in? I mean, obviously it was not. Did contraband come in? Obviously not. So that's your view of the law here? That if they could, they needed to show that somehow the actual work was... The agency of the service mandates that, Judge. It has to be... But, Judge, isn't the fact that a supervisor is having an extra relationship with his employee, I think this is what Judge Hughes was suggesting, have ramifications for the workforce and the orderly workforce, and the agency would not be allowed to say, no, you can't have relations with your supervisors because you would argue that it doesn't affect the efficiency of the service? From the record, you can withdraw from the fact that this other officer was five or six levels below him, my client, and he had no direct or indirect supervision of this person. Well, I don't know what that means. If you're five levels above someone, then you even have more authority over that person. He didn't... Yeah, there may have been people in between, and he had authority of this person to this person to this person. It's a chain of command, right? It is a chain of command, of course, but he was not in any way associated with the reviews of this employee. And... But he could have been if he had wanted to, because he was up in the chain of command. He had more authority than anyone else. But are we firing a civil servant because of something could have happened that never happened, Judge? That's the question for this court. And I submit to you that it never happened. Well, the charge wasn't that he gave her unfavorable positive reviews or benefited in some way. It was conduct unbecoming. And so it's the conduct itself, the relationship. Conduct unbecoming has been ruled by... I get what you're arguing, but I've never seen a case of ours that said an agency can't discipline a superior subordinate relationship. We have plenty of cases that talk about employees on the same level or not in the chain of command. That's a different thing. But that's exactly what I brought to the agency considering officer, which was Ms. Durst. She could have gone over chapter 45, demote him, and we wouldn't be here. She could have used authority. She didn't do it. She terminated him from civil service. So she had on the title, on chapter 45, she could have demoted him, and we wouldn't be here. But they applied chapter 75, and they removed him from service. And what's really intrinsic here is that Mr. Baquero, who was having the same affair, and my client would have position for that seat, he would have exceeded anything that the charging officer or the accusing supervisor on a temporary basis was to be able to compete with a job offering at the agency. And that's all intrinsic in this evidence here. So my argument is the opinion of the court does not support, it's even their own standards under Douglas v. Veterans Administration, the opinion does not articulate any reason other than it's harsh, but it's reasonable. And that's conclusive. You don't destroy a 20-year civil servant performance with these types of awards on a speculation. It never happened. It simply did not happen. There was an ulterior motive here. It's intrinsic in here. I've been working for this case now for almost five years. So I tried the case at the emergency system. I responded to the agency, and my letters are all in the appendix. And this does not rise to the level of conduct on becoming an officer. Conduct on becoming an officer is if you commit a law, a violation of law, you are a criminal. The other husband and this other officer had had a marital incident where the other officer used or threatened to use the government-issued firearm. We don't know. It's not before the court. But that's conduct on becoming. My client didn't do that. So the use of cell phones, they did not identify a single call that my client used for purposes. Yes. There is a policy of cell phones, and it's not prohibiting the use of private. And what about government property? That was undisputed, right? He kissed her in the garage, just like the other officer did. Wasn't there a conference room involved, too? Well, it was leased property. It's not government property. So we can make that distinction even though the government has to go over it? No, no. I'm not asking the court to make that distinction, Judge. I'm not asking the court to do that. It was always jurisdiction issues with even leased property. But the trust of the matter is that the opinion of the Marriage System Protection Board, which my understanding has always been, and I've been working with this agency probably for 10 or 15 years already, that it is to protect the civil rights of the married couple serving from abrupt agency disparities. And this is the case that's before you. My client did not, has always upheld, because if this conduct don't be coming, it should have been brought up when his reviews came to me. Not two years later, after it's all been terminated. And now the other guy continues, and he's my client's boss. Temporarily. So I really don't know what to say other than that the opinion speaks for itself. It's conclusory. It's my opinion bias. It does not consider this court's precedence and utilizes the standards set forth by Douglas versus Veterans Administration in no way, shape, or form. All the court says, well, while it's harsh, it's reasonable. That's not. That's a conclusory statement of law. And the court, in my opinion, had to go beyond that and say, why is it reasonable? It never did that. Okay. Why don't you save the remainder of your bubble. Thank you. You can help me pronounce your name. Of course. Good morning, your honors. I'm Vijaya Sarampudi. I'm here for the respondent, the Department of Homeland Security. May it please the court. The MSDB decision should be affirmed for three reasons. First, Mr. Cruz's arguments intending to cast doubt on the board's decision do not counter that substantial, uncontested evidence that supports all three charges of misconduct. Second, there was substantial evidence to support a nexus between Mr. Cruz's sexual relationship with a subordinate within his chain of command to the efficiency of his duties as the area port supervisor, and in addition, with respect to the loss of trust and confidence that the agency had with Mr. Cruz. I can't remember the details of this. There was some discussion in the briefs about this agency policy or guideline or something. And was that in effect at the time, or did that come into effect afterwards? And if so, does that matter in this case? In simple point, it does not matter. What I think you're referring to is the CBP fraternization with supervisors policy that was enacted after the disciplinary actions were taken. That policy was not in place at the time that the disciplinary action was taken by the deciding official, so it's really hard to say that you could apply that fraternization policy to a decision that's already been made. So in terms of the standards of conduct, it is clear that the CBP standards of conduct does not limit any actions disciplinary, even in an off-duty set, in off-duty actions, to ones that are enumerated in that standard of conduct. In fact, the fraternization policy was in September of 2023. It doesn't ban supervisor-subordinate romantic sexual relationships. It defines subordinate to mean in relation to a direct supervisor, so if you had levels between, this policy wouldn't even require of that what it requires of the direct supervisory relationship. And even as to the supervisory relationship, it says you've got to let your supervisor know so that we can keep an eye on whether there's an actual effect. Admittedly, that can't apply in this case. Doesn't it cast some light on whether the conduct in this case was, I don't know, overpenalized? No, Your Honor. I think that the policy itself, which Which I take to be the gist of the other side's argument. Correct. No, in this case, Mr. Cruz was the area ports director. He was the highest-ranking official at the port of San Juan. He had the ultimate stamp in terms of any kind of actions taken with respect to our employees, and he's responsible for all the employees, which is found in his position description at tab two of the appendix. And so even if this policy only relates to direct supervisors, it doesn't diminish the fact that the standards of conduct still says that even if it's not enumerated in a policy, that the agency can still have discretion to find conduct unbecoming. And there's plenty of case law, as Judge Hughes had said before, that supports when a supervisor is having sexual relationships with a subordinate and the agency finds that there's a loss of trust and confidence. That's enough to suggest that this is not an unreasonable penalty. I should also mention that in the back. What's a case that says that? So Dole Zell, I'm so sorry, Your Honor, Dole Zell. And that's at... And is that a direct report case or what? Yes, so it is directly related here. So... I'm sorry, a direct report. I mean, direct supervisors. No, Your Honor. I'm sorry, what is the case? It's Doe v. Dole Zell. It's... Do you mean Dole Zell versus Army? Sorry, Dole Zell v. Department of the Army. Yes, Your Honor. That's the MSPD case, right? Yes, and it was affirmed by the Federal Circuit. And in that case, this was a second-line supervisor who had had a sexual relationship with a subordinate, and the subordinate supervisor was within that individual's command. So in that case, the MSPD found that that relationship in and of itself, that subordinate supervisory relationship was sufficient to establish a loss of confidence and trust in the supervisor's ability to do their duty. So it doesn't mean that a direct supervisor is necessary to establish that there is oversight. And that was a case in which the charges involved just the relationship, not additional evidence of essentially an employment-related decision affected by the relationship. So, for example, unlike the case that we had, Roebacker. Roebacker was one in which the supervisor actually promised one of the three women involved that he would give her whatever rating he was given for a particular year. So there was more than just the relationship. So in this case, what we have is really just the relationship for the, is that right? Precisely because, right, just the relationship. It's the relationship. I mean, it's, of course, three different charges with respect to the relationship. Using the phone. And government facilities to carry out a sexual relationship. Correct. And using a phone to further the sexual relationship. That's correct, Your Honor. And so, notably, I just want to- Can I ask you about the phone? Was there a policy that they were allowed to use their government phones for personal stuff for de minimis reasons? Yes, Your Honor. However- So your distinction is that he couldn't use the phone for an improper reason? That is correct, Your Honor. And- And the reason that it's improper is because it was to further an affair with a subordinate? That's correct, Your Honor. And I should mention- So if he wasn't having an affair with her, he could have used his phone to call her? Well, for two reasons. One, Your Honor, he could have called her as part of his official duties if he had a reason to call her, or call her for a de minimis personal relationship. But the problem here is it's used to further a relationship that is considered as conduct becoming that led the agency to determine- And that's why it's an improper use of the government phone? Correct. And in the standards of conduct on Appendix 50, it outlines that limited personal use of government computers and office equipment by employees during not work time is considered to be authorized use of government property if the use involves only minimal additional expense, and does not adversely affect the performance of official duties, interfere with the mission of operations of CBP overburden, or any- or violate any standard of conduct as we have in this case. So that is correct, Your Honor. And just remind me, what's the standard of conduct that was violated? So the agency identified that they had the loss of confidence and your ability to act in accordance with ethical and professional standards. They cited to the integrity section 3.1. Right. But isn't that all- I have a little bit of a hard time understanding why that's the standard of conduct. You lose confidence because there's a violation of standard of some conduct. So what's the standard of conduct? It's the integrity to the mission. How do you know that this is a- reflects a lack of integrity? Well, the agency need not go so far as to show that there's some specific action. That's, I think, some of what the appellant is asking for this court to reach, and ask the board to go forth and find specific identified activities. I'm just trying to isolate what is underneath all of this. Everything here is, for goodness sake, he should have known better, and he really seriously should have known better, because in an employment context, in a hierarchical relationship, even with many rungs in the ladder between the two of them, you just can't do that because the agency is not monitor effects that it may never see, but that may be real. Full stop. And then everything else just follows from that. That is correct. So even though that was kind of not written down anywhere, this is kind of just the accumulated message of a number of MSPB decisions? Yes, and decisions of- And then apparently revised downward in September of 2023 in the fraternization policy, where this is not actually banned. You just need to let everybody know. Not everybody, the supervisor. Well, I do want to clarify something about that CBP fraternization policy. It isn't just a reporting requirement as if you need to report you have some kind of business conflict. There's a whole set of procedures in that fraternization policy that outline what must be done because it presumes there's a conflict of interest when the supervisor and a subordinate have a sexual relationship and the agency has to take three distinct actions in order to mitigate any potential conflict of interest. That's all outlined in the policy itself. But it doesn't say if there is a supervisor, subordinate, sexual or romantic relationship, you're fired. It will have- Supervisor. It will instruct the agency must either remove the supervisor from that chain of command or the individual can be followed through. Not if the supervisor, the one involved in the relationship, takes all the steps to make his supervisor aware, et cetera. Correct, but the policy also does say that each situation will be evaluated on an individual basis and that removal may be appropriate based on the misconduct. So it doesn't totally outline- So in this circumstance, if they had self-reported and the agency said there's no place to transfer the supervisor to because he heads the whole office and the same for the employee because she works in this office, then could the agency remove him? Yes, Your Honor, I believe that is correct, that the agency could remove him, obviously establishing a nexus with respect to conduct unbecoming as they did here in terms of the loss of trust and confidence. Was there a determination here that there was nowhere to transfer him to? I thought it was just this is sufficiently serious, you're out of here. That's correct. They could have demoted him, as your friend suggested. They could have, but the deciding official believed that this was a serious action taken by the highest-ranking member of the area, the area port director for the Port of San Juan, the highest-ranking individual having sexual relationships within the office with a subordinate, using government phones, and none of this is contested. This isn't a case where we're not sure whether or not activities happened. But the argument from the other side, I don't understand to be taking issue with any of the facts, only essentially the agency's decision about just how seriously to take it. Well, the standard of conduct does say that for a supervisor, your penalty could be greater than other individuals who may have acted in the same way, because you're held to a higher standard. And this court has repeatedly, and the board, the MSPB has repeatedly found that when there is a supervisor, they are held to a higher standard of conduct than a regular employee. And that's particularly true in this case when we're talking about the highest-ranking member, or highest-ranking official for the Port of San Juan. And so in this case, we believe that the board's decision should be affirmed. And if there are no further questions, I would like to submit. Let me just, Judge Drummond. No, I'm sorry. Okay. Thank you. Thank you, Your Honors. Just briefly, it goes down to notice, opportunity to know what conduct you expect of me. It goes to the scale, the policy, the public policy of this agency is scale disciplinary actions. It is undisputed, and I took her deposition, and she was still employed, even though they went through great lengths to try to hide on the right to privacy issues, the punishment to the other officer was three days suspension. So this was about the agency's failure to demand the conduct that is not printed. That is the basis of knowledge. If you're going to hold me to conduct unbecoming, I better violate a law, I better violate a rule, and I better be on notice. Fundamental fairness, this is what Douglas' factors are, fundamental fairness. And that didn't happen in this case, and the policy that they put together doesn't even prohibit the conduct. There's not a single call that the agency can call that was used in furtherance of the law affair from the private phone numbers. They had the records. They could have printed the cell phone numbers, but yet they never did. It was their phone. They had the call book records. They could not point to one call that was related to this conduct on becoming an officer or the use of a facility that was neither damaged, and it was off the time clock. This was not while they were on duty. So with that, I rest. Thank you for the opportunity to come before you, and we look forward to your review. Hopefully you will conclude that this punishment was not called for and that it exceeded the measurements of reasonableness. Thank you. Thank you. We thank both sides. The case is submitted. That concludes our proceedings. All rise.